United States Court of Appeals

 FOR THE DISTRICT OF COLUMBIA CIRCUIT

 Argued February 28, 2000 Decided March 31, 2000 

 No. 99-5222

 Timothy C. Pigford, et al., 
 Appellees

 Leonard C. Cooper, 
 Appellant

 v.

 Dan Glickman, Secretary, 
 The United States Department of Agriculture, 
 Appellee

 ---------

 Consolidated with 
 No. 99-5223

 Appeals from the United States District Court 
 for the District of Columbia 
 (No. 97cv01978) 
 (No. 98cv01693)

 ---------

 David M. Schnorrenberg argued the cause for appellant. 
With him on the briefs were Richard T. Seymour, Teresa A. 
Ferrante, Stephon J. Bowens, Marcus Jimison, J. Michael 
Klise and Matthew C. Hans. Julie Nepveu and Julie L. Gantz 
entered appearances.

 Alexander J. Pires, Jr. argued the cause for appellees 
Freddie Jones, et al. With him on the brief was Phillip L. 
Fraas.

 Robert M. Loeb, Attorney, U.S. Department of Justice, 
argued the cause for appellee Dan Glickman, Secretary, The 
United States Department of Agriculture. With him on the 
brief were David W. Ogden, Acting Assistant Attorney Gen-
eral, Marleigh Dover, Special Counsel, and Wilma A. Lewis, 
U.S. Attorney.

 Before: Sentelle, Rogers and Tatel, Circuit Judges.

 Opinion for the Court filed by Circuit Judge Rogers.

 Rogers, Circuit Judge: Leonard C. Cooper appeals the 
district court's order approving a consent decree settling 
lawsuits brought by a class of approximately 20,000 African-
American farmers, of which Mr. Cooper is a member, against 
the United States Department of Agriculture ("USDA").1 
See Pigford v. Glickman, 185 F.R.D. 82 (D.D.C. 1999). Un-
der the decree, the United States is likely to provide an 
estimated $2 billion in debt relief and monetary payments in 
consideration for the dismissal of the class' complaint alleging 
that USDA systematically discriminated against them on the 
basis of their race. See id. at 111. Making no claim that the 
farmers' individual claims cannot be fairly and justly resolved 
under the decree, Mr. Cooper contends instead that the 
benefits of the consent decree are illusory because USDA has 

__________
 1 Mr. Cooper is the only member of the class to appeal although 
in noting his appeal he purported to file on behalf of himself 
individually and as a representative of a class of African-American 
farmers, sending copies to nine named persons. None of those 
persons is a named appellant, however. The class representatives, 
the named plaintiffs in the district court, and the Secretary of 
Agriculture are appellees.

reserved the right in paragraphs 19 and 21 to undo the 
decree by regulatory fiat, depriving the farmers of any judi-
cial relief and, thus, the district court abused its discretion in 
approving the decree as fair, adequate, and reasonable under 
Rule 23(e) of the Federal Rules of Civil Procedure. As 
clarified by stipulations in the briefing and oral argument on 
appeal, no basis exists to conclude that USDA would promul-
gate such a regulation under laws in effect when the decree 
was approved by the district court. While paragraph 19 
leaves the class exposed to potential congressional enact-
ments nullifying or modifying the consent decree, the class 
would bear that risk in any event, at least so long as the 
decree remains executory. Additionally, Mr. Cooper's con-
tention concerning the limitation of the district court's author-
ity by paragraph 21 is inconsistent with the plain language of 
that provision. Accordingly, because Mr. Cooper's conten-
tions are unpersuasive on their own terms, and, in light of the 
benefits conferred on the class by the decree taken as a 
whole, we find no abuse of discretion by the district court, 
and we affirm.

 I.

 The consent decree settling the class action was the prod-
uct of lengthy and, at times, contentious negotiations. The 
background is set forth in Judge Friedman's comprehensive 
opinion, Pigford, 185 F.R.D. at 89-92, familiarity with which 
is assumed, and we repeat only the details necessary for this 
opinion.2

 USDA indirectly administers programs that provide credit 
and other benefits to farmers. The USDA's credit and 
benefit programs are federally funded, but the decisions to 
approve or deny applications for credit or benefits are made 
at the county level by a committee of three to five members 
elected by local farmers and ranchers. In addition to acting 
on credit and benefit applications, the county committee 
appoints a county executive to assist farmers in completing 

__________
 2 The district court's opinion appears as an appendix to this 
opinion.

their applications and to recommend to the county committee 
which applications should be approved. Id. at 86. USDA has 
promulgated a number of regulations governing how these 
officials are to administer the credit and benefit programs, 
but the evidence before the district court shows that USDA 
has exercised little oversight regarding how applications his-
torically have been processed at the county level. Id. at 86-
88. For years, African-American farmers, who have been 
significantly underrepresented on the county committees, see 
id. at 87, have complained that county officials have exercised 
their power in a racially discriminatory manner, resulting in 
delayed processing or denial of applications for credit and 
benefits by African-American farmers not experienced by 
white farmers who are similarly situated. Id. at 87-88. Such 
discriminatory treatment is prohibited by statute and by 
regulation. See 15 U.S.C. s 1691(a) (1994); 7 C.F.R. 
ss 15.51, 15.52 (1999). In December 1996, the Secretary of 
Agriculture appointed a Civil Rights Action Team to investi-
gate allegations of racial discrimination in the administration 
of USDA credit and benefit programs, and, in February 1997, 
the USDA Inspector General reported that USDA had a 
backlog of discrimination complaints in need of immediate 
attention. The President and the Secretary thereafter 
sought appropriations to carry out the recommendations to 
improve USDA's civil rights efforts. Pigford, 185 F.R.D. at 
111.

 On August 28, 1997, three African-American farmers filed 
suit on behalf of a putative class of similarly situated African-
American farmers alleging racial discrimination in the admin-
istration of USDA programs and further harm from the 
allegedly surreptitious dismantling of USDA's Office of Civil 
Rights in 1983, which together were alleged to violate the 
Fifth Amendment, the Administrative Procedure Act, 5 
U.S.C. s 551 et seq.; Title VI of the Civil Rights Act of 1964, 
42 U.S.C. s 2000d; and the Equal Credit Opportunity Act 
("ECOA"), 15 U.S.C. s 1691, prohibiting discrimination in 
consumer credit. Following amendments to the complaint, 
the district court granted class certification in October 1998. 
See Pigford, 185 F.R.D. at 90. At that time, most of the 

farmers' ECOA claims were arguably barred by a two-year 
statute of limitations. See 15 U.S.C. s 1691e(f). Responding 
to petitions from class members, Congress enacted, and the 
President signed in November 1998, an amendment to retro-
actively extend the limitations period for persons who had 
filed administrative complaints between January 1, 1981, and 
July 1, 1997, for acts of discrimination occurring between 
January 1, 1981, and December 31, 1996.3 A second class 
action, Brewington v. Glickman, Civ. No. 98-1693, filed in 
July 1998 and making similar allegations covering a different 
time period, was consolidated with Pigford for purposes of 
settlement, and a new class was certified. See Pigford, 185 
F.R.D. at 90.

 As the February 1999 trial date drew near, the parties' 
negotiations shifted from individual claims to a global settle-
ment, id., and with the assistance of a court-appointed media-
tor, the parties developed and agreed to a consent decree that 
contemplated a two-track dispute resolution mechanism to 
determine whether individual class members had been the 
victims of discrimination and, if so, the amount of monetary 
relief to which they were entitled. If a class member opts for 
resolution under Track A, "class members with little or no 
documentary evidence [will receive] a virtually automatic cash 
payment of $50,000 and forgiveness of any debt owed to 
USDA," id. at 95; whereas, class members opting for Track 
B resolution have the opportunity to prove their claims in a 
one-day mini-trial before an arbitrator and, if successful, the 
amount of monetary damages is not capped. Id. Class 
members dissatisfied with the opportunity for resolution of 
their claims under either Track A or Track B could opt out of 
the class within 120 days of entry of the consent decree, and 

__________
 3 See Pub. L. No. 105-277, s 741, 112 Stat. 2681 (codified at 7 
U.S.C. s 2297, notes); see also Statement By President William J. 
Clinton Upon Signing H.R. 4328, 34 Weekly Comp. Pres. Doc. 2108 
(Nov. 2, 1998) ("This bill will also address the long-standing discrim-
ination claims of many minority farmers by adopting my request to 
waive the statute of limitations on USDA discrimination complaints 
that date back to the early 1980s."), reprinted in 1998 U.S.C.C.A.N. 
582.

file individual lawsuits. Id. The district court is to appoint a 
monitor from a list of names provided by the parties "to track 
and report on USDA's compliance with the terms of the 
Consent Decree." Id. at 109.

 By law, the proposed consent decree could not take effect 
until the district court had approved it, see Fed. R. Civ. P. 
23(e), and the district court's approval could not be granted 
until notice had been given to the class of the proposed 
settlement and a fairness hearing had been held to determine 
whether the "settlement is fair, adequate, and reasonable and 
is not the product of collusion between the parties." Pigford, 
185 F.R.D. at 98 (quoting Thomas v. Albright, 139 F.3d 227, 
231 (D.C. Cir. 1998)). The district court held a day-long 
hearing in which representatives of eight organizations and 
sixteen individuals, including Mr. Cooper, voiced their objec-
tions to the terms of the proposed consent decree. Many, 
including Mr. Cooper, objected to the absence of certain 
forms of prospective structural relief, notwithstanding the 
fact that the complaint, as amended, did not seek such 
injunctive relief. Id. at 110. While USDA was likely to face 
billion-dollar monetary liability under the decree, no changes 
to the county committee system were mandated, and objec-
tors feared that no improvements would be made to the way 
in which the farm credit and non-credit programs are admin-
istered. See Transcript of Fairness Hearing ("Tr."), Mar. 2, 
1999 at Joint Appendix (JA) 388 (Mr. Bowens); 493 (Mr. 
Cooper). They also maintained that insufficient information 
had been exchanged during the discovery period leading up to 
the settlement. However, at the fairness hearing, neither 
Mr. Cooper nor his counsel voiced the objections raised now 
on appeal to paragraphs 19 and 21 of the decree. Instead the 
National Council of Community Based Organizations in Agri-
culture ("NCCBOA") argued to the district court that para-
graph 19 "contemplates that a future statute or regulation 
may interfere with the relief that is provided by the decree." 
Tr. at JA 410. Without specifically mentioning paragraph 21, 
NCCBOA objected to that provision on the grounds that the 
class members "are remitted to contract law claims against 
the Government, but the contract here expressly provides 

that they can't have their claims reinstated and the Govern-
ment has got a defense because of its new regulation to the 
relief that's provided by the Consent Decree." Tr. at JA 411.

 Following the hearing, the district court suggested fourteen 
changes to the proposed consent decree, including modifying 
paragraph 19 to require USDA to use its best efforts to 
comply with laws prohibiting discrimination and modifying 
paragraph 21 to make clear that the district court retained 
jurisdiction to enforce the consent decree with its contempt 
power. The class and USDA rejected the first suggestion 
and adopted the second. The district court then allowed 
another round of written objections to be filed to the revised 
consent decree.4 After considering all of the objections and 
the entire record, the district court approved the proposed 
consent decree as fair under Rule 23 and ordered that the 
decree be entered. Mr. Cooper noted an appeal from the 
order, but he did not seek a stay of proceedings under the 
consent decree pending appeal.5

__________
 4 Objections made directly by Mr. Cooper questioned whether 
class counsel truly represented the interests of the class members 
and suggested that the decree contain a provision rendering it void 
if either USDA or class counsel took steps to obstruct the district 
court's jurisdiction to enforce the proposed decree. Mr. Cooper's 
counsel, on behalf of Mr. Cooper, filed eight pages of objections, 
which also questioned the capacity of class counsel to represent the 
class, but made no mention of either paragraphs 19 nor 21 nor of 
the enforceability of the decree as a general matter. In addition, 
the North Carolina Association of Black Lawyers Land Loss Pre-
vention Project at North Carolina Central University Law School 
filed a set of objections jointly with three other organizations, 
including NCCBOA, which stressed, among other things, the view 
that in light of paragraphs 19 and 21, the district court's contempt 
power was inadequate to enforce the decree.

 5 Although the figures differ, USDA and class counsel repre-
sented in their respective briefs that more than 20,000 persons have 
filed claims under the decree. See Appellee USDA's Br. at 15; 
Appellee Plaintiff Class' Br. at 12. At oral argument, class counsel 
represented that as of February 25, 2000, decisions in 9,573 Track A 
cases had been rendered of which 5,746 claims were granted and 

 II.

 The law is well settled that the decision to approve a 
consent decree is committed to the sound discretion of the 
district court. See, e.g., In re Prudential Ins. Co. of Am. Sales 
Practices Litig., 148 F.3d 283, 299 (3d Cir. 1998). The 
district court's role in reviewing the decree is to protect the 
interests of absent class members, and that is done primarily 
by evaluating the terms of the settlement in relation to the 
strength of their case. See Thomas, 139 F.3d at 231. The 
appellate court is not to substitute its views of fairness for 
those of the district court and the parties to the agreement, 
see Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th 
Cir. 1992), but is only to determine whether the district 
court's reasons for approving the decree evidence apprecia-
tion of the relevant facts and reasoned analysis of those facts 
in light of the purposes of Rule 23. See Thomas, 139 F.3d at 
231; see also Kickapoo Tribes v. Babbitt, 43 F.2d 1491, 1495 
(D.C. Cir. 1995). Mr. Cooper bears the burden on appeal of 
making a "clear showing" that an abuse of discretion has 
occurred. See Moore v. National Ass'n of Sec. Dealers, 762 
F.2d 1093, 1107 (D.C. Cir. 1985). He has not done so; on the 
contrary, the district court fulfilled the requirements of Rule 
23 in exemplary fashion.

 On appeal Mr. Cooper has abandoned the objections he 
raised in the district court regarding the lack of prospective 
structural relief and confines his challenge to the consent 
decree to paragraphs 19 and 21, which he contends give 
USDA, in effect, the right to unilaterally withdraw from the 
consent decree leaving class members with no judicial reme-
dy. Mr. Cooper thus contends that the district court erred 
by failing to notify class members specifically of the terms of 

__________
paid in an amount totaling $359,125,000. Of the 3,827 Track A 
claims that were denied in whole or in part, one third have been 
appealed under the terms of the consent decree. In addition, 
approximately 146 class members have opted for resolution under 
Track B. Four cases have been completed, and eighty others are in 
discovery.

the two paragraphs and by approving the decree without 
requiring alteration or deletion of the two paragraphs.6

 In his opening brief, Mr. Cooper contended that USDA can 
use paragraph 19 to renege on its agreement in the consent 
decree in one of three ways: (1) Congress could pass new 
legislation that USDA could interpret to preclude some or all 
of the relief provided by the decree; (2) USDA could promul-
gate new regulations to the same effect without new legisla-
tion; or (3) USDA could interpret existing law to bar the 
relief provided in the decree without promulgating a rule. In 
subsequent briefing by appellees class counsel and USDA, 

__________
 6 The paragraphs under attack provide:

 19. Defendant's Duty Consistent With Law and Regulations
 
 Nothing contained in this Consent Decree or in the Final 
 Judgment shall impose on the defendant any duty, obligation or 
 requirement, the performance of which would be inconsistent 
 with federal statutes or federal regulations in effect at the time 
 of such performance.
 
 ....
 
 21. No Effect if Default
 
 Subject to the terms of p 17, above, [conditioning the decree's 
 obligations on a final judgment dismissing the complaint] and 
 following entry by the Court of Final Judgment, no default by 
 any person or party to this consent Decree in the performance 
 of any of the covenants or obligations under this Consent 
 Decree, or any judgment or order entered in connection there-
 with, shall affect the dismissal of the complaint, the preclusion 
 of prosecution of actions, the discharge and release of the 
 defendant, or the judgment entered approving these provisions. 
 Nothing in the preceding sentence shall be construed to affect 
 the Court's jurisdiction to enforce the Consent Decree on a 
 motion for contempt filed in accordance with p 13 [requiring 
 parties to conciliate before filing contempt motion].
 
 The last sentence of paragraph 21 was added after the fairness 
hearing.

and at oral argument, it has been clarified that there was no 
intent that paragraph 19 include the second and third possi-
bilities; rather, USDA stipulates, and class counsel concurs, 
in their respective briefs that paragraph 19 "simply recog-
nizes the legal reality that Congress makes the laws, and that 
it is the obligation of the government to perform prospective-
ly in conformance with the then binding laws enacted by 
Congress." See Appellee USDA's Br. at 25; Appellee Plain-
tiff Class' Br. at 11.

 With that clarification, USDA's promise to perform under 
the consent decree is not illusory because USDA has not 
reserved a unilateral right to withdraw, cf. Gray v. American 
Express Co., 743 F.2d 10, 19 (D.C. Cir. 1984) (interpreting 
New York law), rather it would take action by Congress to 
enable USDA to withdraw from the consent decree. Conse-
quently, under elementary principles of contract law, USDA's 
promise to perform was backed by consideration at the time 
it was made and the parties have assigned to the plaintiff 
class the marginal risk that Congress might nullify the agree-
ment in some respect by future legislation. Although the 
evidence before the district court establishes the basis for 
class members' mistrust of USDA and concern that the risk 
may be more than hypothetical, see Pigford, 185 F.R.D. at 
110, the fact that Congress and the President acted quickly to 
remove a limitations bar to the plaintiffs' recovery indicates 
that as of October 1998 all three branches of the federal 
government had taken steps to aid in the final resolution of 
the farmers' claims on the merits. The district court noted 
the priority commitment of the President and the Secretary 
of Agriculture, spurred by the efforts of the African-Ameri-
can farmers, to obtain funding to carry out recommendations 
improving USDA's civil rights efforts, as well as Congress' 
"unprecedented action of tolling the statute of limitations." 
Id. at 111. And Mr. Cooper acknowledged through counsel 
on appeal that he has no evidence that this three-branch 
commitment has waned. The district court could therefore 
reasonably conclude when approving the decree that the risk 
of a radical about-face in current federal policy was remote.

 More fundamentally, even in the absence of paragraph 19, 
the class would bear the risk of such hypothetical legislation, 
at least so long as the decree remains executory. See Penn-
sylvania v. Wheeling and Belmont Bridge Co., 59 U.S. (18 
How.) 421, 431-32 (1855); BellSouth Corp. v. FCC, 162 F.3d 
678, 692-93 (D.C. Cir. 1998); see also Landgraf v. USI Film 
Products, 511 U.S. 244, 273-274 (1994); Rufo v. Inmates of 
Suffolk County Jail, 502 U.S. 367, 378 (1992).7 Thus, we 
need not pass upon Mr. Cooper's' contentions concerning 
possible constitutional limitations on Congress' power to enact 
such legislation, see Plaut v. Spendthrift Farm, Inc., 514 U.S. 
211 (1995), nor address the ramifications of such legislation 
under the reasoning of United States v. Winstar Corp., 518 
U.S. 839 (1996), to conclude that the district court did not 
abuse its discretion by approving the proposed consent de-
cree, as amended, which assigns a risk to the plaintiff class 
that it would have borne in any event.

 As to Mr. Cooper's contention that paragraph 21 deprives 
the farmers of the right to ask the district court to modify the 
decree or reinstate their lawsuit in the unlikely event that 
Congress passes legislation nullifying the decree, it too relies 
on a misplaced concern. Paragraph 21 provides that if the 
government defaults on its obligations under the decree, the 
plaintiff class can enforce the decree only by motion for civil 
contempt. Mr. Cooper reads this provision to also "strip[ ] 
the district court of its authority to reopen the final judg-
ment" if Congress enacts legislation allowing for the decree to 
be nullified in whole or in part. However, the very basis for 
Mr. Cooper's contention concerning paragraph 19 is, and 
USDA agrees, that USDA would not be in default under the 
agreement if Congress passed new legislation nullifying, or 
directing the Secretary to nullify by regulation, the consent 
decree. Because that action would not qualify as a default, 
the provisions of paragraph 21 would not apply. Thus, Mr. 

__________
 7 It is to be noted that the relief Mr. Cooper seeks, an order 
vacating the decree and remanding for trial, could require that 
plaintiffs' cases be tried over a number of years, see Pigford, 185 
F.R.D. at 104, and thus could expose class members to this risk for 
a far longer period.

Cooper's contention that the consent decree is unfair because 
the class would not be able to seek relief under Rule 60(b) of 
the Federal Rules of Civil Procedure is mistaken. On its 
face, paragraph 21 does not foreclose that avenue of relief 
when USDA has not defaulted, and thus were Congress to 
enact the hypothesized legislation, paragraph 21 would not 
bar the class from seeking modification of the decree, subject 
to its ability to "establish that a significant change in facts or 
law warrants revision of the decree and that the proposed 
modification is suitably tailored to the changed circumstance." 
Rufo, 502 U.S. at 393.

 Moreover, not only do Mr. Cooper's contentions collapse 
under their own weight, but even were they to retain some 
persuasive force, the court must evaluate the district court's 
decision to approve the consent decree, with whatever short-
comings paragraphs 19 and 21 might present, in light of the 
agreement as a whole. See Thomas, 139 F.3d at 231. In that 
context, there is no doubt that the district court exercised its 
discretion well within the boundaries of the law. The serious 
concerns and objections to the proposed consent decree were 
carefully considered by the district court and balanced 
against the likely alternatives in a manner reflecting a consid-
ered and compassionate conclusion. See, e.g., Pigford, 185 
F.R.D. at 101-04, 109-111. Neither Mr. Cooper nor, to our 
knowledge, any other class member contends at this point 
that the provisions of the consent decree providing monetary 
payments and loan forgiveness are unfair or unreasonable, 
and we have no occasion to consider whether these provisions 
are otherwise unfair or unreasonable. As a result, Mr. 
Cooper has failed to meet his burden to show that the 
enforcement provisions of the decree are so infirm as to 
render the entire agreement unfair or unreasonable. Fur-
thermore, our reasons for finding Mr. Cooper's substantive 
contentions unpersuasive also lead us to reject his procedural 
contentions that the district court did not address the objec-
tions to paragraphs 19 and 21 with sufficient specificity and 
that notice to the class was inadequate because it did not 
specifically describe paragraphs 19 and 21.

 The ultimate question before the court is whether the 
district court abused its discretion by approving a consent 
decree, the principal provisions of which are an indisputably 
fair and reasonable resolution of the class complaint, contain-
ing one paragraph that assigns to the class a risk it would 
have borne in any event and another paragraph that limits 
the mode of enforcing the decree in the event of default. To 
ask the question is to answer it. Because it is clear that no 
abuse of discretion occurred we do not reach the govern-
ment's alternative argument concerning whether it would be 
equitable for this court to vacate the decree in light of the 
number of claims that have been resolved in reliance on the 
decree.

 Accordingly, we affirm the order of approval of the district 
court.

 APPENDIX

 

 (Pages 14 through 79 of slip opinion not available electronically)