[No. 18986-4-III.  Division Three.  May 15, 2001.]

*In the Matter of Firestorm 1991.*

218

*Roland L. Skala* (of *Weeks & Skala*) and *James D. Maloney III* (of *Abel & Maloney*), for appellant.

*William F. Etter* (of *Etter, McMahon, Lamberson & Clary, P.C.*) and *Darrell W. Scott* and *Eric J. Roth* (of *Lukins & Annis, P.S.*), for respondents.

BROWN, J. — After settlement of a class action, Grange Insurance Company, a settling plaintiff, disputes in its appeal the Spokane County trial court's decision to order the return of an overpayment it received from the settlement fund without first holding an evidentiary hearing. We adopt for the first time an abuse of discretion standard for review, decide none occurred, and affirm.

## FACTS

As background, Grange Insurance is one of approximately 400 plaintiffs in consolidated class actions against certain utility companies arising from a 1991 firestorm in Spokane County. After settlement, funds were placed in trust for distribution to the class members under a formula in a written plan of distribution.

The supervising trial court appointed a claims evaluator (Evaluator) to calculate each plaintiff's award for distribution after court approval. At a critical point, substantial

taxes were deducted from the fund by the fund's bank without the knowledge of the Evaluator. Consequently, the Evaluator erroneously calculated and disbursed funds to Grange and six others without proper court order. After the Evaluator could not get Grange to return its overpayment, the matter was submitted to the trial court by motion even though Grange requested an evidentiary hearing. Grange claimed it was being singled out for unfair treatment without due process. After argument, briefing, and supported by an independent audit, the court ordered Grange to return a lesser sum than was originally requested by the Evaluator in order to replenish the settlement fund for the benefit of yet unpaid claimants.

Facts bearing on our analysis follow. The utility companies paid $11 million in settlement. After necessary deductions, about $7.4 million remained. Since the total claims exceeded the settlement fund, the agreed plan contemplated each class member would receive a pro rata share of its claim. A party disputing its initial award calculated by the Evaluator would not be entitled to receive any funds until after reconsideration by the Evaluator. Evaluator decisions regarding the validity and value of each plaintiff's award was final and conclusive, without the right of appeal. All distributions were to be solely upon court order after court approval. Any increased award was to be paid out of fund income, basically interest on the settlement principal. In the event of insufficient income, any increase after reconsideration was to be paid on a pro rata basis.

The Evaluator initially valued Grange's claim at $462,658.56. Its initial pro rata share was calculated at $159,879.98. Grange and 17 others out of 25 successfully sought reconsideration. The Evaluator placed those successful in three categories. The six in category I, merely pointing out mathematical calculation errors, were immediately paid. The seven in category II (including Grange) were considered clarification claimants and also were immediately paid. The category III claimants were to receive delayed payments.

The total category II increase was $194,989.84. Grange's share was $169,056.94. After discovery of the $206,134.11 withdrawn by the bank to pay taxes, contemplated payments to remaining claimants were made impossible. The Evaluator decided it was impractical to seek the reimbursement of the $25,932.90 paid to the other six category II plaintiffs, so he offered to personally replenish the fund by that amount by decreasing his fees. After explaining the problem, the Evaluator asked Grange to return its increase for equitable redistribution. Grange objected, and requested an evidentiary hearing. Grange indicated by counsel that its award had already been disbursed to its attorneys and reinsurers.

The Evaluator submitted the matter to the court by motion. After hearing, the court rejected Grange's request for an evidentiary hearing and orally ordered it to return its overpayment. The court ordered a limited independent audit of the fund that resulted in alternative recommendations, one of which the court adopted. The trial court ordered the Evaluator to reimburse $25,932.90 to the fund, and, in writing, ordered Grange to reimburse the fund $74,678.91. The trial court reasoned that the fairness hearing held when the agreed plan of distribution was entered sufficiently satisfied due process, and another hearing was unnecessary. The trial court characterized Grange's objections as merely procedural.

Upon entry of the court's order, Grange filed this appeal. Concurrently, it moved to disqualify class counsel because of personal animosity and because class counsel would be adverse to one of its class members, allegedly violating Rules of Professional Conduct (RPC) 1.7 and 1.10.

## ISSUES

Did the trial court err by abusing its discretion when approving the Evaluator's proposed distributions, ordering the return of a portion of Grange's overpayment, and denying Grange's request for an evidentiary hearing? Be-

fore addressing the merits, we rule on Grange's motion to disqualify class counsel.

■■ First, Grange's allegations of personal animosity are unsupported by the record. Second, because of the unique nature of a class action, the RPC's cannot be mechanically applied. *In re "Agent Orange" Prod. Liab. Litig.*, 800 F.2d 14, 18 (2d Cir. 1986). "Class counsel's duty to the class as a whole frequently diverges from the opinion of either the named plaintiff or other objectors." *Walsh v. Great Atl. & Pac. Tea Co.*, 726 F.2d 956, 964 (3d Cir. 1983). We recognize frictions are likely to occur between class members and with class counsel, especially during the settlement phase. Accordingly, we adopt the federal balancing approach. *Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581, 589 (3d Cir.), *cert. denied*, 528 U.S. 874 (1999). On balance, we do not view continued class counsel's representation outweighed by the prejudice suggested. *Id.* at 590. Our issue is not complex. It focuses mainly on actions by the trial court and its chosen Evaluator, not class counsel. *See id*; *"Agent Orange"*, 800 F.2d at 19. The mere fact that Grange is a member of the class represented generally weighs heavily in favor of retaining class counsel. *Lazy Oil*, 166 F.3d at 590. The motion is denied.

## ANALYSIS

Deciding the proper standard for reviewing an objection to the trial court's final order of distribution of class action funds is an issue of first impression in Washington. Instructive are federal decisions addressing the issue under FED. R. CIV. P. 23. *See Am. Disc. Corp. v. Saratoga W., Inc.*, 81 Wn.2d 34, 37, 499 P.2d 869 (1972) (examining comparable federal rule for guidance).

■ Civil Rule 23 governs class actions. Class action settlements are favored as an economic use of judicial resources. *In re Motorsports Merch. Antitrust Litig.*, 112 F. Supp. 2d 1329, 1333 (N.D. Ga. 2000). However, class action settlements are susceptible to certain types of abuses.

*Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1147 (11th Cir. 1983). For this reason, a trial court overseeing a class action maintains a higher degree of control in order to protect the class and absentee class members. *See* CR 23(e); *In re Cendant Corp. Sec. Litig.*, 109 F. Supp. 2d 273, 280 (D.N.J. 2000). A trial court must approve a class action settlement, and will not do so unless it is fair, reasonable, and adequate. CR 23(e); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992). The distribution of a class action settlement requires the same scrutiny. *Holmes*, 706 F.2d at 1147.

■ ■ "[T]he allocation of an inadequate fund among competing complainants is a traditional equitable function . . . ." *Curtiss-Wright Corp. v. Helfand*, 687 F.2d 171, 174 (7th Cir. 1982). In deference to this increased level of participation, the trial court's distribution of a class action settlement will be overturned solely upon a showing of abuse of discretion. *Holmes*, 706 F.2d at 1147; *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982). Given these authorities, we adopt an abuse of discretion standard for our review of the supervisory orders of this trial court's administration of the CR 23 settlement distributions.

The standard is quite familiar. "Our appellate standard for abuse of discretion claims is generally whether the trial court's decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons; at times a no reasonable person/judge formulation has also been used." *State v. Turner*, 99 Wn. App. 482, 494, 994 P.2d 284, *review granted*, 141 Wn.2d 1011 (2000) (citations omitted).

■ All agree that the trial court was exercising its broad equitable powers while supervising the administration of the settlement plan. Significantly, Grange is not contesting the settlement plan. Instead, its focus is a particular administrative order entered years later, an order requiring Grange to return an independently documented overpayment for the equitable benefit of other class

members under the original plan. Here, the trial court's critical order was issued after motion hearings. Generally, findings and conclusions are not required in superior court motion practice. CR 52(a)(5)(B). But, that begs Grange's question of whether an evidentiary hearing should have been required in the first place.

Recent federal decisions affirm even original settlements without evidentiary hearings if the record shows that the trial court made a "reasoned response" to the objections. *See In re Pac. Enter. Sec. Litig.*, 47 F.3d 373, 377 n.3 (9th Cir. 1995). In *Thomas v. Albright*, 139 F.3d 227, 233 (D.C. Cir. 1998), the court declined to reverse a settlement for lack of findings on the dissident's objections. *Id.* Thus, due process does not always require an evidentiary hearing.

Here, Grange had the choice of opting out of the settlement plan, but did not. Its objection arose when the Evaluator acknowledged a few overpayments years later. By then, the equities and interests of the bulk of the class were irretrievably fixed. The court aptly pointed out that the plan was determined fair at the outset, a tenable ground. Further, due process can be observed in a motion hearing. Notice and opportunity to be heard, the base requisites of due process, vary with the nature of the case. *In re Dependency of M.S.*, 98 Wn. App. 91, 94, 988 P.2d 488 (1999). The trial court held multiple hearings, allowed ample argument, received memorandum of law, considered an independent audit, examined the record, and allowed argument. In the expansive CR 23 context, we conclude these procedures fully satisfied due process requirements.

Class counsel argues the plan of distribution precludes Grange's appeal, as the Evaluator's determination of the validity and value of a claim is final without further right of appeal. But Grange is appealing the court's administrative procedure to implement the plan, not the validity or value of its claim. Class counsel also cites to *Beecher v. Able*, 575 F.2d 1010 (2d Cir. 1978), which upheld a trial court's authority to modify a plan of distribution. Although factually dissimilar, *Beecher* illustrates the extensive equitable

powers of the trial court when practical problems arise during its administration of a CR 23 settlement.

> Since reversion was foreclosed by the express terms of the settlement and since redistribution of the excess proceeds under the allocation plan's formula would have produced what both sides acknowledged to be inequitable results, it was incumbent upon the district court to exercise its broad supervisory powers over the administration of class-action settlements to allocate the proceeds among the claiming class members more equitably.

*Id.* at 1016. The court went on to hold that " '[u]ntil the fund created by the settlement is actually distributed, the court retains its traditional equity powers. It is not novel law to announce that a court supervising the distribution of a trust fund has the inherent power and the duty to protect unnamed, but interested persons.' " *Id.* (quoting *Zients v. LaMorte*, 459 F.2d 628, 630 (2d Cir. 1972)). Clearly, under *Beecher* and *Zients*, a trial court has the authority to modify a plan of distribution under changed circumstances.

On the other hand, Grange relies heavily upon *Brinkerhoff v. Campbell*, 99 Wn. App. 692, 994 P.2d 911 (2000). However, *Brinkerhoff* is inapposite because its holding applies to a settlement between individuals, not class members. And, Grange's arguments regarding its prior disbursal of the overpayment hint at collateral estoppel, an issue not before us which is for the trial court to first decide.

In sum, the trial court has the authority to require Grange to return the unauthorized overpayment. Grange was properly charged with knowledge that the funds were disbursed in violation of court order. The trial court is not precluded from modifying the distribution plan in a way that will enhance an equitable distribution, so long as it is fair and just in light of the prevailing circumstances.

Finally, in context, Grange was afforded due process without an evidentiary hearing. Grange merely challenges indirectly the value of other awards in an attempt to increase its own award; this is an end to be avoided when

seeking an equitable distribution of limited settlement funds.

Class counsel requests "costs" against Grange, but does not cite any authority for this request or provide a separate argument as required by RAP 18.1(b). Moreover, this appeal is not frivolous. We decide class counsel is not entitled to attorney fees, but is entitled to statutory costs.

## CONCLUSION

We hold the trial court did not abuse its discretion when approving the Evaluator's proposed distributions, ordering Grange to return the partial overpayment of $74,678.91, or denying an evidentiary hearing.

Affirmed.

KURTZ, C.J., and SCHULTHEIS, J., concur.

Review denied at 144 Wn.2d 1021 (2001).