960 F.Supp. 203 (1996)
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,
v.
McDONNELL DOUGLAS CORPORATION, Defendant.
No. 4:95 CV 01414 SNL.
United States District Court, E.D. Missouri, Eastern Division.
November 14, 1996.
Michael Burke, Ann Davis, Thomas Wack, Bryan Cave, St. Louis, MO, for defendant.
Alice Craft, Robert Johnson, C. Mill, S. Royal, E.E.O.C., St. Louis, MO, for E.E.O.C.

ORDER
LIMBAUGH, District Judge.
This matter is before the Court on the Plaintiff's motion for separate trials and discovery on the issues of liability and damages (115). The underlying "pattern-or-practice" and disparate impact action arises under section 7(b) of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C § 626(b). The Plaintiff represents 431 of the Defendant's former employees, age 55 and over, who were laid off during the reduction-in-force that occurred from May 2, 1991, through February 28, 1993.
The Plaintiff argues that separate trials and discovery are appropriate and routine in "pattern-or-practice" employment discrimination actions. It contends that the complex nature of these actions, and the sheer number of plaintiffs involved, make early resolution of the liability issue more expeditious and economical.
*204 The Defendant disputes these assertions, and argues that bifurcation of ADEA claims would violate the Seventh Amendment to the United States Constitution. The Defendant also argues that it would be unfairly prejudiced by separate trials.
As an initial matter, the Court notes that the decision to bifurcate issues for trial is within the sound discretion of the trial court. Rolscreen Co. v. Pella Products of St. Louis, Inc., 64 F.3d 1202, 1209 (8th Cir.1995).
In Teamsters v. United States, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1997), the United States Supreme Court established the appropriate framework for "pattern-or-practice" employment discrimination actions. The Court stated:
At the initial, "liability" stage of a pattern-or-practice suit the [plaintiff] is not required to offer evidence that each person for whom it will ultimately seek relief was a victim of the employer's discriminatory policy. Its burden is to establish a prima facie case that such a policy existed. The burden then shifts to the employer to defeat the prima facie showing of a pattern or practice by demonstrating that the [plaintiff's] proof is inaccurate or insignificant....
If an employer fails to rebut the inference that arises from the [plaintiff's] prima facie case, a trial court may then conclude that a violation has occurred and determine the appropriate remedy....
When the [plaintiff] seeks individual relief for the victims of the discriminatory practice, a district court must usually conduct additional proceedings after the liability phase of the trial to determine the scope of the individual relief.... [A]s is typical of Title VII pattern-or-practice suits, the question of individual relief does not arise until it has been proved that the employer has followed an employment policy of unlawful discrimination. The force of that proof does not dissipate at the remedial stage of the trial....
Id. at 360-62, 97 S.Ct. at 1868; see also Cooper v. Federal Reserve Bank of Richmond, 467 U.S. 867, 876, 104 S.Ct. 2794, 2799, 81 L.Ed.2d 718 (1984) ("While a finding of a pattern or practice of discrimination itself justifies an award of prospective relief to the class, additional proceedings are ordinarily required to determine the scope of individual relief for the members of the class.").
Although, Teamsters, supra, never expressly mentions bifurcated trials, courts have generally held that this method of adjudication is appropriate in. "pattern-or-practice" employment discrimination actions. See e.g. Craik v. Minnesota State University Board, 731 F.2d 465, 470 (8th Cir.1984) ("The trial of class actions is usually bifurcated into a liability phase and a remedial phase.").
The Defendant, however, correctly notes that the Teamsters framework was established in Title VII cases, prior to its amendment in the Civil Rights Act of 1991. Unlike the pre-amendment enforcement provisions of Title VII, the ADEA provides a right to a jury trial. Accordingly, the Defendant argues that these cases are not controlling, and that bifurcation in the jury trial context would violate its rights under the Seventh Amendment to the United States Constitution.
The Seventh Amendment prohibits separate trials on the issues of liability and damages if "the question of damages ... is so interwoven with that of liability that the former cannot be submitted to the jury independently of the latter without confusion and uncertainty...." Gasoline Products Co. v. Champlin Refining Co., 283 U.S. 494, 500, 51 S.Ct. 513, 515, 75 L.Ed. 1188 (1931); see also Ryko Manufacturing Co. v. Eden Services, 823. F.2d. 1215, 1239-40 (8th Cir.1987); In re Rhone-Poulenc Rorer, Inc., 51 F.3d 1293, 1303 (7th Cir.1995); McDaniel v. Anheuser-Busch, Inc., 987 F.2d 298, 305 (5th Cir.1993).
This limitation on the district court's authority to bifurcate issues for trial stems from the "recognition of the fact that inherent in the Seventh Amendment's guarantee of a trial by jury is the general right of a litigant to have only one jury pass on a common issue of fact." McDaniel, 987 F.2d at 305; see also Rhone-Poulenc, 51 F.3d. at 1303 ("The right to a jury trial in federal civil cases, conferred by the Seventh Amendment, is a right to have juriable issues determined *205 by the first jury impaneled to hear them ... and not reexamined by another finder of fact."). The right "derives from two goals, preventing jury confusion and avoiding inconsistent verdicts." Sperling v. Hoffmann-La Roche, Inc., 924 F.Supp. 1346, 1353 (D.N.J.1996); see also McDaniel, 987 F.2d at 305 ("This rule has an additional, pragmatic basisif two juries were allowed to pass on an issue involving the same factual and legal elements, the verdicts rendered by those juries could be inconsistent, producing intolerably anomalous results.").
The Defendant argues that the liability and damages issues in "pattern-or-practice" cases are inextricably intertwined. It explains that anecdotal testimony by individual plaintiffs may be introduced and evaluated at both trials. For instance, the Defendant suggests that it could conceivably, and appropriately, present nothing other than anecdotal testimony to rebut the Plaintiff's prima facie case at the liability trial. The Defendant contends that if this were the only evidence presented, a finding of a pattern or practice by the liability jury would necessarily entail an evaluation of the merits of the individual claims. Accordingly, any subsequent findings by a remedial jury would be unconstitutional under the Seventh Amendment.
Additionally, the Defendant argues that it will proffer the same evidence at both trials. At the liability trial, the evidence will be used to show a lack of a pattern or practice of discrimination. At the damages trial, it will be used to show that there was no discrimination at all. Since both juries will be required to evaluate the same evidence, the Defendant claims that there is a substantial risk of irreconcilable verdicts.
The Defendant's arguments are misplaced. Although some of the evidence may overlap, the issues to be decided at the separate trials are wholly distinct. At the liability trial, the question is whether the employer engaged in a pattern or practice of discrimination. The only fact issue for the jury to decide is whether unlawful discrimination was the employer's regular procedure or policy. Teamsters, 431 U.S. at 360, 97 S.Ct. at 1867; Cooper, 467 U.S. at 875-76, 104 S.Ct. at 2799-2800. Once this issue has been decided, it is conclusively established. Teamsters, 431 U.S. at 361-62, 97 S.Ct. at 1867-68 (proof that the employer had a policy of unlawful discrimination "does not dissipate at the remedial stage of the trial"); Cooper, 467 U.S. at 880, 104 S.Ct. at 2801-02 (individual class members bound by adverse judgment against class on "pattern-or-practice" claim).
At the damages trial, the question is whether the individual class members are entitled to relief. The fact issues for the jury to decide are whether the individual employment decisions were made pursuant to the previously established discriminatory policy. Teamsters, 431 U.S. at 361-62, 97 S.Ct. at 1867-68. "[T]he question of individual relief does not arise until it has been proved that the employer has followed an employment policy of unlawful discrimination." Id. at 361, 97 S.Ct. at 1868. Accordingly, even under the scenario suggested by the Defendant, the issues of fact to be determined by the respective juries remain separate and distinct. Therefore, the Court concludes that bifurcation is appropriate and permissible under the Seventh Amendment.
The Court also concludes that the Defendant will not be unduly prejudiced by separate trials. Although the Defendant will not be able to present evidence regarding each individual termination at the liability trial, it can "introduce direct statistical evidence, anecdotal evidence, illustrative evidence of individual dismissals and any other evidence that bears on the issue of whether a pattern of discrimination existed." Sperling, 924 F.Supp. at 1353 (citations omitted). Moreover, as stated above, "pattern-or-practice" employment discrimination cases are routinely bifurcated. Id.
Finally, the Court recognizes that its decision to bifurcate the issues for trial will undoubtedly affect discovery. The Court concludes, however, that it would be premature to address any discovery issues before the parties have had a Rule 16 Scheduling Conference. Accordingly, the Court has attached an order setting. a Rule 16 Scheduling Conference. Any anticipated concerns regarding *206 discovery should be raised at that time.
Accordingly,
IT IS HEREBY ORDERED that the Plaintiff's motion for separate trials on the issues of liability and damages ($15) is GRANTED.
IT IS FINALLY ORDERED that any concerns regarding discovery should be raised at the Rule 16 Scheduling Conference on December 16, 1996.