Charles TAYLOR, et al., Plaintiffs,

v.

DISTRICT OF COLUMBIA WATER &
SEWER AUTHORITY, Defendant.

No. CIV.A. 01–00561HHK.

United States District Court,
District of Columbia.

Jan. 2, 2002.

David A. Branch, Washington, DC, for plaintiff.

Julia Perkins, Washington, DC, Mary E. Pivec, Greenberg Traurig, L.L.P., Washington, DC, for defendant.

## OPINION AND ORDER

KENNEDY, District Judge.

In this case Charles Taylor alleges that the District of Columbia Water and Sewer Authority ("WASA") discriminated against him and other WASA African American employees in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and Section 1981 of the Civil Rights Act of 1871, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981 ("1991 Act"). In addition to his own claims, Taylor seeks to prosecute claims on behalf of a class of WASA African American employees. Before the court is WASA's motion to dismiss Taylor's class claims. WASA argues that because Taylor seeks compensatory damages and trial by jury in addition to injunctive relief, he cannot, as a matter of law, satisfy the requirements for class certification set forth in Federal Rule of Civil Procedure 23(b) ("Rule 23(b)" or "23(b)"). Upon consideration of WASA's motion, the opposition thereto, and the record of the case, the court concludes that the motion to dismiss should be denied.

## I. FACTUAL BACKGROUND

Taylor seeks to prosecute this action on behalf of a plaintiff class consisting of all African American employees and applicants who sought and were denied positions or career ladder promotions at WASA from October 1996 through December 2000. Taylor alleges that after WASA became an independent authority in 1996 and ceased to be bound by District of Columbia personnel regulations and civil service protections, it instituted an "at-will" employment system without uniform personnel policies. Taylor alleges that this system allows management to hire and promote candidates based on word of mouth and to manipulate candidates' scores in favor of those handpicked in advance. As a result of this system, Taylor alleges, African American employees are denied the opportunity to advance to the same level and at the same rate as similarly situated white employees.

Specifically, Taylor claims that African American employees are hired at the lowest level of the career ladder and are required to serve as long as five years for career ladder promotions, while similarly situated white employees are hired at higher levels and regularly receive promotions in less than five years. Taylor also claims that equally qualified African American employees are often passed over for promotions in favor of white employees of the Washington Suburban Sanitation Commission and other outside agencies. In addition, Taylor alleges that African Americans encounter a "glass ceiling" at WASA: although they make up approximately seventy-five percent of the agency's employees, they are "underrepresented" at higher pay grade levels.

With respect to his individual claims, Taylor asserts that he applied for several promotions during his tenure at WASA, but was passed over despite demonstrating the required qualifications. Taylor has been employed by WASA as a civil engineering technician for the past twelve years. The civil engineering career ladder ranges from grade DS–2 through grade DS–11; Taylor's current grade is DS–8. Advancement to a higher grade within the series requires that the employee serve the required time in-grade, demonstrate the ability to perform at the next grade, and receive the recommendation of his or her supervisors. According to WASA, "ability" is determined by the employee's supervisors, and includes dedication to the job, getting along well with co-workers and clients, and technical aptitude. Taylor alleges that in June 2000, his supervisor at the time, an African American male, wrote a letter recommending Taylor for a promotion to grade DS–9 on the basis that Taylor had demonstrated the above qualifications. Nonetheless, the Director of the Department of Engineering and Technical Services, a white male, denied Taylor the promotion.

Taylor filed a race discrimination charge with the Equal Employment Opportunity Commission ("EEOC") on September 19, 2000, and filed the present action within nine-

ty days of receiving a right to sue letter from the EEOC.[1]

## II. ANALYSIS

### A. Statutory Background

Taylor alleges disparate treatment and disparate impact claims under Title VII and requests declaratory and injunctive relief as to both claims. Taylor also requests compensatory damages and trial by jury on his disparate treatment claim as provided for under the 1991 Act. Before addressing whether Taylor's disparate treatment claim qualifies for class certification under Rule 23(b), it is helpful to review the disparate treatment cause of action and the effect the 1991 Act had upon it.

#### 1. Disparate Treatment

█ In his disparate treatment claim, Taylor alleges that WASA engaged in a "pattern or practice" of discriminating against African American employees. As explained by the Supreme Court in *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977) ("*Teamsters*"), the "pattern or practice" disparate treatment theory focuses on group-wide allegations of intentional discrimination.[2] To establish a pattern or practice claim, the plaintiffs must prove that intentionally discriminatory practices were the defendant's "standard operating procedure," not merely sporadic or isolated occurrences. *Id.* at 336, 97 S.Ct. 1843.[3]

█ Suits alleging pattern or practice claims are typically divided into two phases, a liability phase and a damages phase. *See id.* at 360–62, 97 S.Ct. 1843; *Berger v. Iron Workers Reinforced Rodmen*, 170 F.3d 1111, 1124 (D.C.Cir.1999). In the first phase, the plaintiffs must establish through a common

method of proof that the employer is liable to the class for the pattern or practice of discrimination. *See Teamsters*, 431 U.S. at 360, 97 S.Ct. 1843; *Berger*, 170 F.3d at 1124. This is usually done with a combination of statistical evidence regarding the defendant's treatment of the class as a whole and anecdotal testimony from individual class members regarding specific acts of discrimination. *See Teamsters*, 431 U.S. at 336, 97 S.Ct. 1843; *Robinson v. Metro–North Commuter R.R. Co.*, 267 F.3d 147, 158 (2nd Cir.2001).

█ If the plaintiffs succeed in establishing liability in the first phase, the court may order class-wide injunctive and declaratory relief. *Teamsters*, 431 U.S. at 336, 97 S.Ct. 1843. If the plaintiffs also seek individual monetary relief, they proceed to the second phase, called a *"Teamsters* hearing." *See Hartman v. Duffey*, 88 F.3d 1232, 1235 n. 2 (D.C.Cir.1996). In a *Teamsters* hearing, each plaintiff enjoys the presumption that any adverse employment action taken against him or her by the defendant was due to the pattern or practice of discrimination established in the liability phase; therefore, the plaintiff's burden at the damages phase is simply to show that such an adverse action took place. *See Teamsters*, 431 U.S. at 362, 97 S.Ct. 1843. The burden of persuasion then shifts to the defendant to show that there was a legitimate, non-discriminatory reason for the adverse action. *See id., Hartman*, 88 F.3d at 1234 n. 2. If the defendant fails to meet this burden, the plaintiff is entitled to individualized equitable relief such as back pay and front pay. To obtain compensatory damages, the plaintiff must also prove pain and suffering. *See* 42 U.S.C. § 1981a(b)(3).

#### 2. The 1991 Act and Title VII

Prior to the passage of the 1991 Act, injunctive and declaratory relief were the only

---

1. The time within which Taylor is required to file a motion for class certification was stayed pending the court's ruling on WASA's motion to dismiss.

2. In disparate impact claims, in contrast, no showing that the defendant acted with discriminatory intent is necessary. *See Griggs v. Duke Power Co.*, 401 U.S. 424, 432, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971).

3. Individual disparate treatment claims, as opposed to pattern or practice claims, focus on discriminatory acts against a single individual and proceed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

remedies available to litigants who successfully prosecuted either disparate treatment or disparate impact Title VII claims. Therefore, the only type of monetary relief available under Title VII was equitable relief in the form of back and front pay, and there was no right to a jury trial in any Title VII claim. *See, e.g., Lehman v. Nakshian*, 453 U.S. 156, 164, 101 S.Ct. 2698, 69 L.Ed.2d 548 (1981).

The legal landscape changed with the passage of the 1991 Act. The Act expanded the remedies available in disparate treatment claims, allowing for recovery of compensatory and punitive damages, *see* 42 U.S.C. § 1981a(a)(1), and providing a right to jury trial for claimants seeking such damages, *see* 42 U.S.C. § 1981a(c). Injunctive relief remains the only remedy available for those asserting disparate impact claims, however.

### B. Class Certification

In order to obtain class certification, Taylor must demonstrate that the class meets all four prerequisites of Rule 23(a)[4] and falls within at least one of the three categories of Rule 23(b). *See, e.g., Hartman*, 19 F.3d at 1468. WASA concedes that there are issues of fact that preclude disposing of any 23(a) issue at the present stage of this litigation. It bases its motion to dismiss solely on the grounds that a class cannot as a matter of law be certified under any subsection of 23(b). Because the parties focus their arguments on 23(b)(2)("(b)(2)") and 23(b)(3)("(b)(3)") and because we find that Taylor has adequately stated a claim for certification under both (b)(2) and (b)(3), there is no need to reach the issue of certification under (b)(1).

WASA's arguments against certification closely follow the rationale of the Fifth Circuit's decision in *Allison v. Citgo Petroleum*, 151 F.3d 402 (5th Cir.1998). Very similar to the claims alleged in this case, the plaintiffs in *Allison* alleged disparate impact and disparate treatment race discrimination stemming from the defendant's informal and sub-

jective hiring and promotions practices. Likewise, there, as here, the plaintiffs sought injunctive relief and compensatory damages and sought a jury trial on their damages claim. 151 F.3d at 407–08. After analyzing the relationship between the certification requirements under 23(b) and the 1991 Act, The Fifth Circuit held that certification of such a claim was precluded as a matter of law.

While other circuits have explicitly addressed the ruling in *Allison*, this Circuit has yet to do so. It is therefore appropriate to analyze the rationale for Allison's holding in light of this Circuit's post–1991 case law regarding (b)(2), hybrid (b)(2)/(b)(3), and partial (b)(3) certification of Title VII claims.

### 1. 23(b)(2) and Compensatory Damages

Rule 23(b)(2) permits class certification if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2). While the rule itself is silent as to whether and to what extent monetary relief may also be sought, the Advisory Committee Notes on Rule 23 state that (b)(2) certification "does not extend to cases in which the appropriate final relief relates *exclusively or predominantly* to money damages." Fed.R.Civ.P. 23 (advisory committee notes) (emphasis added). The Notes also state that "cases in the civil rights field" are "illustrative" of the types of class actions suitable for certification under (b)(2). *Id.; see Eubanks v. Billington*, 110 F.3d 87, 92 (D.C.Cir.1997); *Stewart v. Rubin*, 948 F.Supp. 1077, 1089 (D.D.C.1996).

Focusing on the language from the first of these Notes, the *Allison* court laid down a rule for determining when money damages "predominate" such that (b)(2) certification is precluded. Monetary relief predominates, the court stated, unless it is "incidental" to the requested injunctive or declaratory relief. 151 F.3d at 415. The court defined inciden-

---

4. The four prerequisites of Rule 23(a) are: that the class is so numerous as to make joinder impracticable; that there are questions of law or fact common to the class; that the claims or defenses of the representative parties typify those of the class; and that the representative parties will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a).

tal monetary relief as that which flows "directly from liability to the class *as a whole* on the claims forming the basis of the injunctive or declaratory relief." *Id.* (emphasis in original). The court further explained that incidental damages

> should at least be capable of computation by means of objective standards and not dependent in any significant way on the intangible, subjective differences of each class member's circumstances. Liability for incidental damages should not require additional hearings to resolve the disparate merits of each individual's case ....

*Id.* The court took pains to include claims for back pay in this definition on the grounds that back pay constitutes an equitable remedy. *Id.* However, the court found that the compensatory damages made available to disparate treatment claimants by the 1991 Act fell squarely outside the incidental category. "[T]he very nature of [compensatory] damages, compensating plaintiffs for emotional and other intangible injuries, necessarily implicates the subjective differences of each plaintiff's circumstances ...." *Id.* at 417. The court therefore held that the district court had not abused its discretion in finding that the class action at issue could not be certified under (b)(2).

In contrast to the Fifth Circuit, the D.C. Circuit, the Second Circuit, and the Seventh Circuit have held in decisions postdating the 1991 Act that Title VII class actions seeking compensatory damages in addition to injunctive relief may be certified under various (b)(2) theories, including so-called "hybrid" certification in which a(b)(2) class is certified as to the claims for injunctive and declaratory relief and a(b)(3) class is certified as to the claims for monetary relief. *See Thomas v. Albright,* 139 F.3d 227 (D.C.Cir.1998) (race discrimination claim seeking $2.4 to $4 million in compensatory damages; certification under (b)(2) affirmed); *Eubanks,* 110 F.3d 87 (D.C.Cir.1997) (race discrimination claim seeking $8.5 million in compensatory damages; certification under (b)(2) affirmed); *Robinson,* 267 F.3d 147 (2nd Cir.2001) (race discrimination claim seeking unspecified compensatory damages; denial of class certification vacated and remanded for hybrid (b)(2)/(b)(3) and/or partial (b)(3) certification); *Lemon v. Int'l Union of Operating Eng'rs,* 216 F.3d 577 (7th Cir.2000) (race and gender discrimination claim seeking unspecified compensatory damages; certification under (b)(2) vacated but remanded for consideration of hybrid (b)(2)/(b)(3) certification).

Although WASA argues that the Seventh and Eleventh Circuits have "adopted *Allison's* rationale" for rejecting (b)(2) certification of Title VII class actions seeking compensatory relief, this is true only in regards to traditional (b)(2) certification. The Seventh Circuit has held that hybrid (b)(2)/(b)(3) certification is permissible in such cases, *see Lemon,* 216 F.3d at 581–82; *Jefferson v. Ingersoll Int'l, Inc.,* 195 F.3d 894, 899 (7th Cir.1999), as has at least one district court in the Eleventh Circuit, *see Shores v. Publix Super Markets, Inc.,* 1996 WL 407850 (M.D.Fla.1996). In the only Eleventh Circuit Court of Appeals decision citing *Allison* on (b)(2), the court declined traditional (b)(2) certification without addressing hybrid certification and remanded for consideration of (b)(3) certification. *Murray v. Auslander,* 244 F.3d 807, 812–13 (11th Cir.2001). Thus, no other circuit has adopted *Allison's* bright-line rule precluding all forms of (b)(2) certification in Title VII claims for injunctive relief and damages.[5]

The law of the D.C. Circuit is most fully set forth in *Eubanks v. Billington,* a case alleging class claims similar to those in this case. *Eubanks* involved an appeal by two class members seeking to opt out of the (b)(2) class.[6] The court began its analysis by

---

5. The Eleventh Circuit also cited *Allison* in declining (b)(3) certification in two non-Title VII discrimination claims. *See Rutstein v. Avis Rent–A–Car Systems, Inc.,* 211 F.3d 1228 (11th Cir.2000) (discrimination in contracts claim under 42 U.S.C. § 1981); *Jackson v. Motel 6 Multipurpose, Inc.,* 130 F.3d 999 (11th Cir.1997) (discrimination in public accommodations claim under Title II of the Civil Rights Act of 1964).

6. WASA argues that *Eubanks* and *Thomas* do not govern this case because they involved certification of settlement classes. However, the class in *Eubanks* was certified prior to settlement. *See id.,* 110 F.3d at 89. Moreover, as the court explained in *Thomas,* a "settlement class" must still comply with all the requirements of 23(a) and 23(b). *See id.,* 139 F.3d at 234 (citing *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 117

acknowledging that "the underlying premise of (b)(2) certification-that the class members suffer from a common injury that can be addressed by classwide relief-begins to break down when the class seeks to recover back pay or other forms of monetary damages to be allocated based on individual injuries."[7] *Id.*, 110 F.3d at 95. This break down of cohesion, the court noted, raises the due process concerns underlying the notice and opt out requirements of certification under (b)(3). *See id.* at 95; *see also Robinson*, 267 F.3d at 166.

■■■ The court found that these concerns did not prevent (b)(2) certification, however, because they could be addressed by allowing opt outs in (b)(2) actions under one of several approaches. *See Eubanks*, 110 F.3d at 96 n. 14.[8] One approach is the "hybrid" certification described above, in which the class is certified under (b)(2) for liability and (b)(3) for damages, thus granting opt out and notice protections at the damages stage. *See id.* Another approach, known as "partial certification," is to bifurcate the action into liability and damages phases and certify a(b)(3) class on liability only, postponing consideration of whether class certification is appropriate for the damages phase until plaintiffs have made it that far. *See id.; see also Pigford v. Glickman*, 182 F.R.D. 341, 351 (D.D.C.1998) (applying the partial certification approach and noting that "[i]f liability is found and the case reaches the remedy stage, the Court will have to determine the most appropriate mechanism for determining remedy. It is possible that at that point it would be appropriate to certify a class pursuant to Rule 23(b)(3).").

Both of these approaches were considered and rejected by the *Allison* court as a basis for certification. Although this court is bound by *Eubanks* and not by *Allison*, we will briefly examine the holdings in *Allison* regarding these hybrid (b)(3) claims because WASA bases its motion to dismiss upon them.

## 2. 23(b)(3) and Compensatory Damages

The *Allison* court found that Title VII claims seeking compensatory relief could not be certified under either the hybrid (b)(2)/(b)(3) approach or the partial (b)(3) approach because the plaintiffs' damages claims could not satisfy the requirements for certification under (b)(3). 151 F.3d at 420. Rule 23(b)(3) permits certification when "questions of law or fact predominate over any questions affecting only individual members, and the class action is superior to other methods for a fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).[9] In finding that the plaintiffs failed to satisfy the predominance prong, the *Allison* court simply reiterated its grounds for denying (b)(2) certification: plaintiffs' claims for compensatory damages could be established "only through examination of each plaintiff's individual cir-

---

S.Ct. 2231, 138 L.Ed.2d 689 (1997)). Thus, cases certifying classes for settlement under 23(b) have the same precedential value as other 23(b) cases.

**7.** Both WASA and the *Allison* court cite this passage, *see* 151 F.3d at 413, but their reliance on it is misplaced, as *Eubanks* gave its approval to certification of Title VII claims seeking both injunctive relief and compensatory damages under the hybrid and partial approaches discussed below, whereas *Allison* foreclosed certification under any 23(b) subdivision for such claims. Also, to the extent that *Eubanks* demonstrates concern over individualized damages determinations, its concern encompasses back pay, which the *Allison* court summarily concluded did not interfere with (b)(2) certification. *See Allison*, 151 F.3d at 415. "That back pay is characterized as a form of 'equitable relief' in Title VII cases does not undercut the fact that variations in individual class members' monetary claims may lead to divergences of interest that make unitary representation of a class problematic in the damages phase." *Eubanks*, 110 F.3d at 95.

**8.** *See also Robinson*, 267 F.3d at 166 (noting that *Allison's* bright-line prohibition on (b)(2) certification of class claims seeking both injunctive and compensatory relief "eliminates" the "due process risk," but that this risk can just as easily be eliminated under hybrid (b)(2) approaches allowing opt outs.).

**9.** The factors to be considered under this test include: A) the interests of the members of the class in individually controlling prosecution or defense of separate actions; B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; C) concentrating the litigation of the claims in a particular forum; D) the difficulties likely to be encountered in management of a class action. Fed.R.Civ.P. 23(b)(3).

cumstances. Individual issues therefore predominate the litigation . . . ." 151 F.3d at 419. The same grounds were used to reject the superiority prong: "The predominance of individual-specific issues relating to the plaintiffs' claims for compensatory damages in turn detracts from the superiority of the class action . . . ." *Id.*[10]

The *Allison* plaintiffs' compensatory damages claim was held to preclude partial certification under (b)(3) as well. *See id.* at 420–22. The court found that even though this approach would not actually certify the damages claim-the claim that the court found to stand in the way of (b)(2) certification-the mere fact that damages were *requested* made individual issues the focus of the action, defeating the (b)(3) predominance requirement. Thus, the court viewed partial certification as an attempt to "manufacture predominance" by progressively cutting away individual issues until the balance shifted towards common ones, a result the court found "could not have been intended" under Rule 23. *Id.* at 422. By virtue of their request for compensatory relief, therefore, plaintiffs were summarily disqualified from meeting the predominance requirement under (b)(2), the predominance requirement under (b)(3), and the superiority requirement under (b)(3), under either a hybrid or a partial certification theory.

As discussed above, this bright line rule is not consistent with D.C. Circuit case law, which emphasizes an ad-hoc approach and does not treat compensatory damages claims as per se incompatible with 23(b). In *Eubanks*, the circuit court found that district courts have ample discretion to implement hybrid certification under Rule 23(d)(5), which allows them to "make appropriate orders . . . requiring for the protection of the members of the class or otherwise for the fair conduct of the action." *See id.*, 110 F.3d at 96; Fed.R.Civ.P. 23(d)(5). This rule is "broad enough to permit the court to allow . . . (b)(2) opt-outs . . . when necessary to facilitate the fair and efficient conduct of the litigation."[11] Rule 23 also provides authority for partial certification under 23(c)(4), which allows an action to be "maintained as a class action with respect to particular issues." Fed.R.Civ.P. 23(c)(4)(A).

In addition to alleviating due process concerns, the flexible approaches advocated by *Eubanks* reflect a more nuanced notion of predominance, both in its (b)(2) and (b)(3) incarnations, than the bright-line *Allison* approach.[12] The *Allison* rule precludes certification of any action that includes a claim for compensatory damages, even if class-based injunctive relief is the "form of relief in which the plaintiffs are primarily interested." *Allison*, 151 F.3d at 429 (Dennis, J., dissenting); *see also Robinson*, 267 F.3d at 163. As several courts in this jurisdiction have noted, the injunctive relief available in employment discrimination claims may have a far greater impact on both parties, financially and other-

**10.** We also note that the two cases the *Allison* court relied upon in ruling against hybrid (b)(2)/(b)(3) class actions are highly distinguishable on their facts from both *Allison* and the present case. First, the court stated that under its earlier decision in *Castano v. American Tobacco Co.*, 84 F.3d 734 (5th Cir.1996), (b)(3) certification would "degenerate in practice into multiple lawsuits separately tried." *Allison*, 151 F.3d at 419 (citing *Castano*, 84 F.3d at 745 n. 19). The court failed to note, however, that *Castano* was a mass torts action involving millions of class members and wide variations in state law, and therefore posed predominance and manageability problems not faced in *Allison* or the present case. The second case the court cited, *Jackson v. Motel 6*, 130 F.3d 999 (11th Cir.1997), was a discrimination in public accommodations claim brought under Title II of the Civil Rights Act of 1964 that involved discrimination at over 700 hotels nationwide. Because there was no statistical evidence upon which the plaintiffs could rely, the facts of each alleged incident of discrimination required examination simply to establish liability, *see id.* at 1006, an immense manageability challenge not present in *Allison* or this case.

**11.** The *Eubanks* court held that the district court had not abused its discretion in not granting opt outs to the two appellants, because they failed to show that the settlement was unfair as to their claims. *See id.*, 110 F.3d at 97–99.

**12.** The Second Circuit has also advocated a more case-sensitive test for (b)(2) certification, requiring that the district court find that "1) even in the absence of a possible monetary recovery, reasonable plaintiffs would bring the suit to obtain the injunctive or declaratory relief sought; and 2) the injunctive or declaratory relief sought would be reasonably necessary and appropriate were the plaintiffs to succeed on the merits." *Robinson*, 267 F.3d at 164.

wise, than even substantial compensatory relief. In *Stewart v. Rubin*, 948 F.Supp. 1077 (D.D.C.1996), the court certified plaintiffs' Title VII race discrimination claim under (b)(2), finding that monetary relief did not predominate despite a settlement agreement providing $4 million in compensatory damages. The court found that "any one of the equitable remedies" provided in the settlement, including promotions and reinstatement, could be worth more than each plaintiff's share of the compensatory damages award over his or her career. *Id.* at 1092. *See also Pigford*, 182 F.R.D. at 351. Just as compensatory damages do not automatically negate the finding that injunctive relief predominates in a(b)(2) class action, they do not automatically negate the finding that common issues predominate in a(b)(3) class action. *See Lewis v. Nat'l Football League*, 146 F.R.D. 5, 12 (D.D.C.1992).

### 3. 23(b)(3) and the Seventh Amendment

Seventh Amendment concerns were also raised by the *Allison* court in its (b)(3) analysis. *See Allison*, 151 F.3d at 420–25. These concerns arise from the procedural impact of the 1991 Act on *Teamsters* bifurcation. Under *Teamsters*, hearings are held to determine individual damages after a class-wide liability phase. Because the 1991 Act allows jury trials in disparate treatment claims, however, both phases must now be tried to a jury. The *Allison* court thus foresaw that in a class of more than a thousand members-similar to the class size in this case-multiple juries would be required for the damages phase. The court found that this posed manageability problems and made it likely that "successive juries would pass on issues decided by prior ones," *see id.* at 420, thus running afoul of the Seventh Amendment's Re-examination Clause, which provides that "no fact tried by a jury, shall be otherwise reexam-

ined in any Court of the United States." U.S. Const. amend. VII.

■ As noted above, however, the D.C. Circuit has ruled that hybrid certification in Title VII class actions remains appropriate after the 1991 Act. *See Thomas*, 139 F.3d 227 (D.C.Cir.1998); *Eubanks*, 110 F.3d 87 (D.C.Cir.1997). Although the D.C. Circuit has not explicitly addressed the Seventh Amendment in so ruling, the majority of courts to do so have found that it does not present an obstacle to hybrid certification of Title VII claims. *See, e.g., Robinson*, 267 F.3d at 169 n. 13; *EEOC v. Dial Corp.*, 156 F.Supp.2d 926 (N.D.Ill.2001); *Butler v. Home Depot Inc.*, 1996 WL 421436 (N.D.Cal. 1996) (noting that "courts have routinely adopted" bifurcation in disparate treatment class actions); *EEOC. v. McDonnell Douglas Corp.*, 960 F.Supp. 203, 205 (E.D.Mo.1996) (noting that " 'pattern-or-practice' claims are routinely bifurcated.").[13] These courts have rejected the argument-advanced by WASA in this case-that the fact that "overlapping proof" may be heard by separate liability and damages juries violates the Seventh Amendment, noting that the Re-examination Clause does not prohibit two juries from reviewing the same evidence, but only from deciding the same factual issues. *See McDonnell Douglas*, 960 F.Supp. at 205; *Dial*, 156 F.Supp.2d at 957.[14]

■ In a bifurcated disparate treatment claim, the only factual issue for the jury to decide in the liability stage is whether "unlawful discrimination was the employer's regular procedure or policy." *McDonnell Douglas*, 960 F.Supp. at 205 (citing *Teamsters*, 431 U.S. at 360, 97 S.Ct. 1843). Once this liability has been established, it is conclusive and "does not dissipate at the remedial stage of the trial." *Teamsters*, 431 U.S. at 361, 97 S.Ct. 1843. The sole factual issue,

---

**13.** The district courts of the Eleventh Circuit form the exception, adopting *Allison*'s holding on the Seventh Amendment. *See, e.g., Rink v. Cheminova, Inc.*, 203 F.R.D. 648, 671–72 (M.D.Fla.2001); *Adler v. Wallace Computer Servs., Inc.*, 202 F.R.D. 666, 673–74 (N.D.Ga. 2001).

**14.** This view finds support in the Supreme Court's decision in *Gasoline Prods. Co. v. Champ-*

*lin Ref. Co.*, 283 U.S. 494, 51 S.Ct. 513, 75 L.Ed. 1188 (1931), in which the Court allowed a partial new trial on damages before a separate jury, finding that damages and liability were not "so interwoven . . . that the former cannot be submitted to the jury independently of the latter without confusion and uncertainty." *Id.* at 497–98, 51 S.Ct. 513.

then, at the damages phase is whether the adverse employment action suffered by each plaintiff was taken pursuant to the policy of unlawful discrimination. *See Teamsters,* 431 U.S. at 361–62, 97 S.Ct. 1843; *McDonnell Douglas,* 960 F.Supp. at 205. While evidence regarding individual adverse actions may enter at both stages, it is used to prove different issues in each stage: in the liability stage, it serves to illustrate a general policy of discrimination; in the damages phase, it demonstrates causation and harm with regards to a specific individual. *See Allison,* 151 F.3d at 433–34 (Dennis, J., dissenting); *McDonnell Douglas,* 960 F.Supp. at 205 (citing *Sperling v. Hoffmann–La Roche, Inc.,* 924 F.Supp. 1346, 1353 (D.N.J.1996)). Thus, with adequate instructions to each jury regarding its role, reexamination of factual issues can be avoided. *See Allison,* 151 F.3d at 434 (Dennis, J., dissenting); *Robinson,* 267 F.3d at 169 n. 13; *Dial,* 156 F.Supp.2d at 957.[15] The Seventh Amendment therefore does not bar (b)(3) certification of Title VII claims for compensatory relief.

 In sum, this court concludes that while compensatory damages claims and a request for a jury trial may be relevant considerations in deciding whether certification of a Title VII action under 23(b) is appropriate, neither factor precludes certification as a matter of law. Certification under (b)(2), (b)(3), or hybrid or partial approaches is available to Title VII claimants seeking compensatory relief and trial by jury. Taylor has stated a claim for certification under any of these theories by alleging that WASA engaged in discriminatory employment practices against African American employees and applicants. Specifically, he alleges that because of WASA's informal word of mouth and back-door personnel practices, African Americans are hired at lower levels and required to serve longer for promotions than similarly situated whites, and are underrepresented at higher pay levels. Whether Taylor will obtain class certification depends upon further factual development of his claims, but cannot be decided as a matter of law prior to discovery and the filing of a motion for class certification. *See, e.g., Miller v. Baltimore Gas & Elec. Co.,* 202 F.R.D. 195, 201 (D.Md.2001).

### III. CONCLUSION

For the foregoing reasons, it is this 2nd day of January, 2002, hereby

**ORDERED** that defendant's motion to dismiss is **DENIED**.

---

**15.** Plaintiffs' disparate impact claim can be tried together with the disparate treatment claim as to liability. However, because there are no compensatory damages available for disparate impact-and therefore no right to trial by jury-the judge must determine equitable relief for this claim separately.